UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

CAROLYN B. CANADY                               CIVIL ACTION NO. 13-0923

VERSUS                                          JUDGE ROBERT G. JAMES

CADDO PARISH SHERIFF                            MAG. JUDGE KAREN L. HAYES
STEVE PRATOR, ET AL.

# RULING

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 based on claims of false arrest, retaliatory arrest, and excessive force asserted by Plaintiff Carolyn Canady ("Plaintiff") against Caddo Parish Deputies Jessica Benevage and Justin McDonnell and Sergeant Carl Henderson in their individual and official capacities and against Caddo Parish Sheriff Steve Prator in his official capacity.  Plaintiff also asserts related state law claims.

Pending before the Court are Defendants' "Motion to Strike Plaintiff's Affidavit of Brittany Rotharmel" [Doc. No. 38] and Defendants' Motion for Summary Judgment [Doc. No. 30].  For the following reasons, the Motion to Strike is DENIED, and the Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

I.      FACTS AND PROCEDURAL HISTORY

On May 5, 2012, Plaintiff took a typed eviction notice to her nephew, Ronnie Goodman ("Goodman").  Plaintiff, along with her brother and two sisters, owns an undivided interest in five acres of property in Keithville, Louisiana.[1]  Plaintiff's daughter, Jeri Bruner ("Bruner"), Goodman,

_____

[1]  Keithville is in Caddo Parish, Louisiana.

and several of Plaintiff's relatives live in trailer-homes on the property, but Plaintiff does not.

En route to Goodman's residence, Plaintiff called the Caddo Parish Sheriff's Department and asked that an officer be dispatched to assist with the eviction notice and for protection. [Doc. No. 32, Exh. A-2, Deposition of Carolyn Canady ("Canady Depo."), pp. 18-25]. Goodman is known for being "erratic and aggressive," and, earlier that same day, a Shreveport police officer searched Goodman's trailer on suspicion of drug manufacture, although the search had finished by the time Plaintiff and the deputies arrived. [Doc. No. 32, Exh. BR-1, Affidavit of Brittany Rotharmel ("Rotharmel Affidavit"), ¶6]. In response to Plaintiff's request, Caddo Parish Deputies Justin McDonnell ("Deputy McDonnell") and Mike King ("Deputy King") were dispatched to Goodman's residence, and the eviction notice was served.

Later that same night, Caddo Parish deputies were again dispatched to the property regarding a female visitor of Goodman. The female had apparently abandoned an infant in the nearby woods. Goodman was not arrested. [Doc. No. 32, Exh. A-2, Canady Depo., pp. 147-48].

The next day, on May 6, 2012, Deputies Jessica Benevage ("Deputy Benevage") and King responded to a call involving a dispute between Goodman and Donna Gaspard, who is Plaintiff's sister and Goodman's mother. Goodman had threatened to slit his mother's throat because he believed she owed him money for electricity for the property's community well. [Doc. No. 32, Exh. DG, Deposition of Donna Gaspard, pp. 11-17]. Gaspard declined to press charges. *Id.* at pp. 42-43.

Hours later, Deputies Benevage, King, and McDonnell and Sergeant Carl Henderson ("Sergeant Henderson") were again dispatched to the same location, this time regarding a fight between Plaintiff and Goodman. Bruner, who was out of town for work, called her mother (the Plaintiff) and informed her that Goodman had stolen a breaker out of Bruner's breaker box, which

2

consequently had cut the electricity to her trailer-home.  [Doc. No. 32, Exh. A-2, Canady Depo., pp. 134, 143, 154 and 164].  Plaintiff drove to the property and confronted Goodman; a heated argument ensued.  The commotion alerted Brittany Rotharmel ("Rotharmel"), a neighbor, and she called 911, telling the operator that her neighbors were "fighting out front." [Doc. No. 30, Exh. 3, CD of 911 Calls and Radio Dispatches].

After the deputies arrived, they interviewed Benny Howell; Plaintiff; Goodman; and Rotharmel. [Doc. No. 30, Exh. 4, Benevage Affidavit, ¶¶ 3-4].  When questioned by Deputy McDonnell, Rotharmel confirmed that she had heard Plaintiff and Goodman screaming and arguing. [Doc. No. 30, Exh. 9, Transcript of Conversation Between  Rotharmel and Deputy McDonnell]. However, Rotharmel testified later that Plaintiff did nothing to alarm her, but, rather, that Goodman was the primary source of the disturbance. [Doc. No. 32, Exh. BR-1, Rotharmel Declaration, ¶ 5]. The deputies and Sergeant Henderson discussed the information they had obtained and agreed that there was probable cause to arrest Plaintiff and Goodman for disturbing the peace. [Doc. No. 30, Exh. 4, Benevage Affidavit, ¶ 6].  Deputy Benevage then arrested Plaintiff for disturbing the peace. [Doc. No. 30, Exh. 2, Recording of Deputy McDonnell's MVS, at 2112:30].  The charges against Plaintiff were later dismissed. [Doc. No. 34. Exh. A, Caddo Parish Order of Dismissal].  Plaintiff alleges that Deputy Benevage informed her that she was being arrested because they had been out there too many times.   [Doc. No. 32, Exh. A-2, Canady Depo., p. 175].

When initially handcuffed, Plaintiff complained  that the handcuffs were too tight. [Doc. No. 32, Exh. 1, at p. 10, ¶ 12].  Plaintiff is five-feet-two inches tall and weighs approximately 235 pounds. [Doc. No. 30, Exh. 11, Verification of Dr. Michelle Ritter, p. 2]  She also claims to have extraordinarily short arms, to such a degree that she contends that her wrists were unable to meet

behind her back, causing the handcuffs to pull against the outside of her wrists, no matter how tightly

or loosely they were secured.  . [Doc. No. 32, Exh. 1, at p. 10, ¶ 11].  Plaintiff alleges her arms are

so short that the condition is apparent and needs no explanation. *See, e.g.,*  [Doc. No. 32, Exh. DC,

Deposition of Deborah Campbell, p. 35].

Deputy Benevage ensured that the handcuffs were not secured too tightly by placing two

fingers between the handcuffs and Plaintiff's skin. [Doc. No. 30, Exh. 1, Recording of Deputy

King's MVS, at 2116:02 and Doc. No. 30 Exh. 4, Benevage Affidavit, ¶ 12].   In transit to the jail,

Plaintiff again stated the handcuffs were too tight, so Deputy Benevage pulled over at the Caddo

Sheriff substation and asked Deputy McDonnell to check the handcuffs. [Doc. No. 30 Exh. 4,

Benevage Affidavit, ¶ 12].  Deputy McDonnell made sure the handcuffs were not too tight--he

confirmed that he could place two fingers between the handcuffs and Plaintiff's skin.  [Doc. No. 30,

Exh. 1, Recording of Deputy King's MVS, at 2130:26].  However, Plaintiff alleges that at "no time

did a deputy stick their fingers between her wrists and the handcuffs." [Doc. No. 32, Exh. A-1,

Canady Declaration, ¶11].

Plaintiff had no injury to or pain in her wrists and hands prior to being handcuffed. [Doc.

No. 32, Exh. A-1, Canady Declaration,  p. 5].  However, Plaintiff suffered bruises and contusions

on her wrists and hands, allegedly from the handcuffs.  Plaintiff continues to suffer pain in her wrists

and hands to this date. *Id.*

After her release, Plaintiff sought medical treatment from Dr. Marion Milstead, complaining

of soreness and swelling in her wrists.  Dr. Milstead diagnosed Plaintiff with handcuff palsy,

attributing the condition to external trauma to the superficial radial nerve. [Doc. No. 32, Exh. MM,

Deposition of Dr. Milstead, pp. 11, 16-17].  Dr. Milstead opines that handcuff palsy generally results

from handcuffs being applied too tightly, but also opines that even appropriately placed handcuffs can cause the condition. Generally, however, when handcuffs are applied appropriately, Dr. Milstead testified that handcuff palsy does not result. *Id.* at pp. 70, 75.  Dr. Milstead further testified that the risk is reduced where an individual is handcuffed in front rather than behind the back. *Id.* at p. 75.

Plaintiff was also evaluated by Defendants' expert, Dr. Michelle Ritter, an orthopaedic hand surgeon.  Dr. Ritter opines that Plaintiff's injuries were not caused by overly tightened handcuffs. [Doc. No. 30, Exh. 11, Verification of Dr. Michell Ritter, p. 4].  Rather, referencing Plaintiff's "body habitus," Dr. Ritter states that Plaintiff's injuries were likely caused by her inability to "get her wrists closer than about 10 inches from one another" when handcuffed behind her back.  *Id.*  Dr. Ritter concludes that this resulted in considerable tension in the handcuffs on her wrists and hands.  *Id.*

On May 5, 2013, Plaintiff initiated this action, asserting claims under 42 U.S.C. § 1983 for false arrest, retaliatory arrest, and excessive force.  Plaintiff also alleged related state law claims.

On December 8, 2014, Defendants filed a  Motion for Summary Judgment. [Doc. No. 30]. Plaintiff filed a memorandum in opposition [Doc. No. 32], to which Defendants replied. [Doc. No. 37].

On January 12, 2015, Defendants also filed a Motion to Strike the Affidavit of Brittany Rotharmel. [Doc. No. 38].  Plaintiff filed a memorandum in opposition, [Doc. No. 41], to which Defendants did not reply.

## II.    LAW AND ANALYSIS

### A.    Motion to Strike

A motion to strike an affidavit filed in support of, or in opposition to, a motion for summary judgment is governed by Rule 56(e) of the Federal Rules of Civil Procedure.  Rule 56(e), in pertinent

part, provides that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence . . . ." FED. R. CIV. P. 56(e).

Citing *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 495 (5th Cir. 1996), Defendants argue that Rotharmel's affidavit should be struck from the record because it is contradicted by her later deposition testimony. The *S.W.S. Erectors* court held that a party cannot defeat a motion for summary judgment by relying on facts in an affidavit that clearly contradicts the party's prior deposition testimony. *Id.* The holding in *S.W.S. Erectors* is distinguishable, however, because Rotharmel is not a party and because the affidavit was produced before the deposition, not *vice versa* as in *S.W.S. Erectors.*

The implicit rationale undergirding the *S.W.S. Erectors* decision was that courts should view contradictory evidence offered by interested parties with suspicion, especially when, for purposes of summary judgment, an interested party attempts to invalidate damaging deposition testimony by correcting it with a later, inconsistent "sham" affidavit. That is not the case here. Because Rotharmel is not a party, she had no motive when she signed the affidavit to be anything but truthful. The Court notes that her subsequent deposition testimony clarifies that there were "errors" in her affidavit, but that clarification does not implicate the sham affidavit doctrine. Moreover, Rotharmel clearly has personal knowledge of the events she averred to, and her affidavit would be admissible. Therefore, Defendants' Motion to Strike Brittany Rotharmel's Affidavit is DENIED**.**

    **B.**    **Motion for Summary Judgment**

        *1.*    *Standard of Review*

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

### 2.    *§ 1983 Unlawful Arrest Claims Against Deputies Benevage and McDonnell and Sergeant Henderson.*

Plaintiff contends that Deputy Benevage lacked probable cause to arrest her for disturbing the peace, that Deputy McDonnell and Sergeant Henderson failed to intervene in her arrest, and, therefore, that the officers are not shielded by qualified immunity.

### a)        *Probable Cause to Arrest for Disturbing the Peace*

The Louisiana statute provides in relevant part that a disruption of the peace occurs "when [an enumerated action] would "foreseeably disturb or alarm the public," including:

> (2)  Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; **or** call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty.

LA. REV. STAT. ANN. § 14:103 A.(2) (emphasis added).

"Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Safford Unified Sch. Dist. No. 1 v. Redding,* 557 U.S. 364, 370 (2009) (internal citations and quotations omitted). Probable cause "requires more than a bare suspicion but less than a preponderance of evidence." *Haggerty v. Tex. Southern University*, 391 F.3d 653, 656 (5th Cir. 2004).  Moreover, probable cause "is determined on the basis of facts available to the officer at the time of the arrest, and an officer may be shielded from liability even if he 'reasonably but mistakenly conclude[s] that probable cause is present.'" *Evett,* 330 F.3d at 688 (quoting *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)).  Finally, probable cause may be supported by the collective knowledge of law enforcement personnel who communicate with each other prior to the arrest, but, relying on a totality of facts, law enforcement personnel also "may not disregard facts tending to dissipate probable cause." *Evett,* 330 F.3d at 688 (internal citations and quotations omitted).

Citing case law and the applicable statute, Plaintiff argues there is only probable cause to arrest an individual for disturbing the peace if the suspect (1) uttered profane "fighting words;" (2) in a public place; and (3) with the specific intent to deride, offend, or annoy.  Defendants, citing the statute's second clause, argue that an officer need only have probable cause to believe that the suspect made a "noise or exclamation" in the presence of another and did so with the intent to "deride, offend, or annoy" him or her.

Generally, there is no requirement under LA. REV. STAT. ANN. § 14:103 (A)(2) that there be probable cause that a suspect uttered "fighting words."  Plaintiff's primary attack on the lawfulness of her arrest is based on a number of criminal cases where the appellate court found insufficient evidence of guilt beyond a reasonable doubt that the criminal defendant had uttered fighting words against police officers.  *See, e.g., State v. Wolverton,* 474 So. 2d 1003, 1006 (La. Ct. App. 1985) (reversing criminal defendant's conviction for disturbing the peace on grounds that there was insufficient proof, beyond a reasonable doubt, that defendant had uttered fighting words against arresting police officers); *State v. Miller,* 97-2142, p. 8 (La. App. 4 Cir. 11/12/97); 703 So.2d 125, 128 (same). Those cases, however, involve speech directed at officers, and such speech receives greater First Amendment protections as officers are expected to tolerate insults and complaints more than the general populace.  *See Miller,* 703 So.2d at 128 (higher standard exists "when the person to whom the comments are addressed is an officer.").  In civil cases, as here, where the suspect was arrested for speech directed at non-officers, Louisiana courts have interpreted LA. REV. STAT. ANN. § 14:103 (A)(2) to require only that there be probable cause to believe that the suspect uttered words with the "intent to 'deride, offend, or annoy'" the recipient.  *State v. Barr,* 2001-0696, p. 9 (La. App. 3 Cir. 12/28/01), 806 So. 2d 137, 144 (quoting LA. REV. STAT. ANN. § 14:103 (A)(2)).

Nor does the statute require that the suspect's words be uttered in a public place.  Louisiana courts, contrary to Plaintiff's position, interpret the two clauses in § 14:103 (A)(2) separately and hold that the statute's second clause has no specific location requirement.  In *Barr*,  the court rejected the criminal defendant's argument that, because he was on private property when he made obscene remarks to a neighbor, he was unlawfully arrested for disturbing the peace. *Barr,* 806 So. 2d at 144. The court held that the second clause of  LA. REV. STAT. ANN. § 14:103 (A)(2) was a stand-alone provision, stating that a violation under that provision "does not require the victim to be in a public place."  *Id.*  Consequently, if an officer has probable cause to believe that the suspect made "any noise or exclamation" in another individual's presence--regardless of location--"with the intent to deride, offend, or annoy him," the officer can lawfully arrest.

There is sufficient evidence on record that Plaintiff made a "noise or exclamation" in the presence of Goodman with the intent to "deride, offend, or annoy" him.   Rotharmel, the neighbor who made the 911 call regarding Plaintiff and Goodman's altercation, told the operator that "[T]hey're fighting and arguing." [Doc. No. 30, Exh. 8, Transcript of Rotharmel 911 Call].  When the police arrived at the scene, Rotharmel confirmed that she had heard Plaintiff and Goodman fighting and screaming and that she could hear them from her trailer.  [Doc. No. 30, Exh. 9, Transcript of Conversation Between Rotharmel and Deputy McDonnell].

As noted by the *Barr* court, the "intent to 'deride, offend, or annoy can be inferred.'" 806 So. 2d at 144.  The direct and circumstantial evidence presented to Deputy Benevage at the scene, which is supported by Rotharmel's later deposition, were sufficient for Deputy Benevage to conclude that probable cause to arrest existed.   Rotharmel's after-the-fact averment that Plaintiff was not screaming or disturbing the peace does not generate genuine issues of material fact as to whether a

10

reasonable officer had probable cause at the scene. Therefore, there was probable cause to arrest Plaintiff for disturbing the peace.

### b)       *Qualified Immunity*

Qualified immunity shields government officials from civil damages liability unless (1) the official violated a statutory or constitutional right that was (2) clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Once a defendant invokes qualified immunity, as Defendants have done here, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

The Supreme Court has explained that the clearly established standard incorporates an objective reasonableness inquiry*. Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014). The question of whether an official's conduct was objectively reasonable is a question of law, to be decided by the court. *Evett v. DETNTFF*, 330 F.3d 681, 687 (5th Cir. 2003) (internal citations omitted). If officers "of reasonable competence could disagree as to whether Plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Supreme Court has also cautioned that reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

With regard to § 1983 claims for unlawful arrest, an officer's conduct is objectively reasonable "if a reasonable person in their position could have believed he had probable cause to arrest." *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009). On the other hand, it was clearly

established in May 2012 that an arrest unsupported by probable cause  "is unlawful" and therefore objectively unreasonable.  *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004).

Because the Court concludes that probable cause existed to arrest Plaintiff for disturbing the peace, Deputies Benevage and McDonnell and Sergeant Henderson are entitled to qualified immunity.  Even assuming, *arguendo,* that probable cause lacked, a reasonably competent officer in Deputy Benevage's position could still conclude probable cause existed.  Therefore, Defendants' Motion for Summary Judgment is GRANTED to the extent it seeks dismissal of Plaintiff's claim for unlawful arrest against Deputies Benevage and McDonnell and Sergeant Henderson in their official and individual capacities.

### 3.  § 1983 Claim Against Caddo Parish Sheriff Prator for Unlawful Arrest

Plaintiff apparently levies a § 1983 unlawful arrest claim against Sheriff Prator in his official capacity. *See* [Doc. No. 1, p. 2, and pp. 5-8, Plaintiff's Complaint].  Suits initiated under § 1983 "may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cnty.,* 571 F.3d 388, 395 (5th Cir. 2009).  "Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (citing *Monell v. Dep't of Soc. Serv. of N.Y.C.*, 436 U.S. 658, 690 (1978)).  Therefore, an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity." *Goodman,* 571 F.3d at 395 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Local governmental agencies cannot be held vicariously liable under § 1983**.** *Monell*, 436 U.S. at 691.  Section 1983 actions against governmental entities require a plaintiff  "to identify a

[governmental] 'policy' or 'custom' that caused the plaintiff's injury."' *Goodman*, 571 F.3d at 396 (citing *Board of County Comm'rs of Bryan Cnty v. Brown,* 520 U.S. 397, 403 (1997)).

Plaintiff fails to allege–in either her Complaint or her opposition memorandum to summary judgment–that Sheriff Prator has instituted a policy of unlawfully arresting individuals. Defendants, on the other hand, have submitted competent summary judgment evidence that the Caddo Parish Sheriff's Office specifically prohibits arrests without probable cause, and Plaintiff has presented no evidence that this policy has been disregarded. [Doc. No. 30, Exh. 13, Sanders Affidavit, p. 2]. Thus, there are no genuine issues as to whether Sheriff Prator had a policy of unlawfully arresting individuals in violation of § 1983**.** Defendants' Motion for Summary Judgment is therefore GRANTED to the extent it seeks dismissal of Plaintiff's unlawful arrest claims against Sheriff Prator in his official capacity.

### 4.  § 1983 Claim for Retaliatory Arrest

Plaintiff also contends, even if there was probable cause to support her arrest for disturbing the peace, Defendants arrested her in "retaliation" for exercising her First Amendment rights.[2] The First Amendment "prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (internal citations omitted). While Plaintiff has a Constitutional right to be free from retaliation for exercising her First Amendment rights, Defendants may avoid liability if they are entitled to qualified immunity.

---

[2] Plaintiff claims she was arrested for her efforts to evict Goodman (calling the police), or, alternatively, for opposing her arrest. *See* [Doc. No. 1, p. 5, Plaintiff's Complaint].

13

Again, "qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citing *al-Kidd*, 131 U.S. at 2080 (2011)).   When determining whether a right was clearly established, the Fifth Circuit does not recognize generalized rights in the "abstract,"  but rather, for purposes of qualified immunity, demands that the contours of that right be particularly outlined by existing case law on the rationale "that  reasonable officials should be on notice that their conduct is unlawful." *McCreary v. Richardson,* 738 F.3d 651, 656 (5th Cir. 2013).

The Supreme Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." *Reichle,* 132 S. Ct. at 2093.   More importantly, such a right was not clearly established in the Fifth Circuit at the time of Plaintiff's arrest.  *See Ashcraft v. City of Vicksburg*, 561 F. App'x 399, 401 (5th Cir. 2014) (*per curiam*) (holding that police officer was entitled to qualified immunity in the face of the plaintiff's § 1983 retaliatory arrest claim because it is not "clearly established" in the Fifth Circuit that one has the right "to be free from a retaliatory arrest that [is] otherwise supported by probable cause.") (citing *Reichle, supra*).

Plaintiff cites *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), and *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995), for the proposition that a §1983 claim for retaliatory arrest for exercise of free speech is cognizable even where the arrest was otherwise predicated on probable cause. Those cases are inapposite. They do not confront the issue of probable cause or retaliatory arrests.  Rather, those cases were initiated by inmates who claimed prison officials had retaliated against  them for exercising their constitutional right of access to courts.

14

Because the undisputed evidence shows there was probable cause to arrest Plaintiff and because there is no "clearly established" right to be free from a retaliatory arrest that is otherwise supported by probable cause in the Fifth Circuit, Defendants are shielded by qualified immunity on Plaintiff's retaliatory arrest claim.   Accordingly, Defendants' Motion for Summary Judgment is GRANTED to the extent it seeks dismissal of Plaintiff's retaliatory arrest claim.

### 5.        *§ 1983 Excessive Force Claim Against Deputies Benevage and McDonnell*

Plaintiff also claims that the Deputies Benevage and McDonnell exerted excessive force when arresting and handcuffing her.   In response, Defendants argue that the deputies are shielded by qualified immunity.   Consequently, the Court must resolve two issues: (1) whether the officers' alleged conduct violated Plaintiff's constitutional rights, and, if so, (2) whether those rights were clearly established at the time of her arrest. *See Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).

### a)        *Excessive Force*

Plaintiff alleges that the deputies used excessive force by handcuffing her behind the back, rather than in the front, or, alternatively, by handcuffing her too tightly.   An excessive force claim arises where the plaintiff demonstrates (1) an injury, (2) which resulted directly and only from a use of force that was excessive to the need, and (3) the excessiveness of which was objectively unreasonable. *Bush*, 513 F.3d at 501.

The Fifth Circuit has held that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).   In contrast, long-term nerve damage resulting from a handcuffing can support an excessive force claim.  *See Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009).   The second and third prongs of the constitutional violation analysis requires a

determination of whether the officers' conduct was "unreasonable under the circumstances." *Bush,* 513 F.3d at 501; *see also Graham,*, 490 U.S. at 396 ("Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.").  Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight."*Graham,*, 490 U.S. at 396.

The Court finds that there are factual issues as to whether Deputies Benevage and McDonnell exerted excessive force when arresting Plaintiff.  It is undisputed that Plaintiff alleges more than a *de minimus* injury.  Dr. Ritter and Dr. Milstead both confirm that Plaintiff's radial nerves were damaged, and that the damage was caused at least in part by the handcuffs.  Plaintiff also alleges that she has ongoing pain and has been unable to cut hair and perform daily living activities as a result of this damage.

Further, there are genuine issues of material fact as to whether the officers used excessive force that was unreasonable. The "reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury." *Lytle*, 560 F.3d at 411; *see also Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) ("since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable and widely shared.").  It is also undisputed that Plaintiff complained that the handcuffs were too tight on several occasions.  Defendants assert that the deputies checked the handcuffs after Plaintiff's complaints and confirmed that they were not too tight, an assertion which is supported by Deputy

16

King's MVS recording.  However, considering Plaintiff's allegation that she has extraordinarily short arms, which is supported by the Defendants' medical expert, and that she is obviously overweight, the relevant inquiry is not whether Plaintiff should have been handcuffed initially, but rather whether an objectively reasonable officer would have handcuffed her in the front instead of behind her back. Framed in this light, the *Graham* factors weigh heavily in Plaintiff's favor.  She was arrested for a minor crime, gave the arresting deputies no indication that she was a threat or a flight risk, and was not particularly resistant.  A reasonable factfinder, considering these factors and Plaintiff's physical conditions, could conclude that it was excessive and unreasonable for the deputies to initially handcuff Plaintiff behind the back and excessive and  unreasonable to keep her handcuffed behind the back after she repeatedly complained of pain in her wrists.  Thus, Plaintiff has alleged a cognizable constitutional claim for use of excessive force against Deputies Benevage and McDonnell.

### b)      *Qualified Immunity*

Defendants contend that they are entitled to qualified immunity on Plaintiff's excessive force claim, even if Plaintiff was deprived of a constitutional right. The qualified immunity analysis requires the Court to "ask the somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable." *Lytle*, 560 F.3d at 410; *see also Bush*, 513 F.3d at 501 ("[E]ven though an officer's use of force must be objectively unreasonable to violate constitutional rights, a defendant's violation of constitutional rights can still be objectively reasonable if the contours of the constitutional right at issue are sufficiently unclear.") (internal citations omitted).  Courts must judge the reasonableness of an officer's conduct by taking into account the "tense, uncertain, and rapidly evolving" circumstances

in which officers must often "make split-second judgments about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.  "From this on-scene perspective rather than the 20/20 vision of hindsight, courts should examine the objective reasonableness of an officer's belief that a certain degree of force was lawful under the circumstances."  *Bush*, 513 F.3d at 502.

At the time of her arrest, Plaintiff had a clearly established right to be free from excessive force,  *Tarver,* 410 F.3d at 753-54, and it was clearly established that improperly placed handcuffs can give rise to a § 1983 excessive force claim where serious injury results. *See Devill*e, 567 F.3d at 168-69 (holding that defendant police officers were not entitled to qualified immunity over excessive force claim where they handcuffed the plaintiff so tightly that it caused long-term nerve damage to the plaintiff's wrists).  Although the Fourth Amendment's reasonableness standard is "not capable of precise definition or mechanical application," the test is sufficiently clear for Deputies Benevage and McDonnell to have known that, considering Plaintiff's physique and repeated complaints, handcuffing her behind the back rather than in the front was excessive and unreasonable.  Therefore,  Defendants' Motion for Summary Judgment is DENIED to the extent it seeks dismissal of Plaintiff's excessive force claims against Deputies Benavage and McDonnell in their individual capacities.   However, because the claims against the deputies in their official capacities are duplicative,[3] to this extent, Defendants' Motion for Summary Judgment is GRANTED and those claims are DISMISSED WITH PREJUDICE.

---

[3]  The real party in interest in an official-capacity suit is the governmental entity, not the named official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S 159, 166 (1985)).  Thus, Plaintiff's allegations against Deputies Benevage and McDonnell in their official capacities are, in effect, claims against Caddo Parish.

### 6.    § 1983 Excessive Force Claim Against Sheriff Prator

Plaintiff also asserts an excessive force claim against Sheriff Prator in his official capacity, which are actually claims against Caddo Parish.  *See Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) (claims asserted against Sheriff in his official capacity are treated as claims against the entity he represents); *see also Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011) (same).

As previously noted, vicarious liability does not apply to governmental entities for claims under § 1983.  *Monell*, 436 U.S. at 691.  Rather, liability against a governmental entity under § 1983 requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotations and citations omitted).   These three components—an official policy, a policymaker, and the "moving force" of the policy—"are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

A § 1983 plaintiff can establish an official policy through evidence of "custom," that is, "a persistent, widespread practice of city [or governmental] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 579 (quoting *Webster v. City of Hous.*, 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*)).  On the other hand, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for [governmental] section 1983 liability." *Piotrowski*, 237 F.3d at 581 (internal citations omitted).

19

The Fifth Circuit has held that sheriffs are final policymakers in the area of law enforcement. *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1014 (5th Cir. 2003) (citing *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 244 (5th Cir. 1993)).   Further, actual or constructive knowledge of the policy can obviously be imputed to the policymaker where evidence exists that he is the individual that instituted the policy. *See Brown v. Bryan Cnty., OK*, 219 F.3d 450, 458 (5th Cir. 2000) (judgment as a matter of law on plaintiff's municipal liability claim precluded where jury could have found county liable based on sheriff's "policy" of failing to train new officers on lawful arrest procedures).

Finally, a governmental entity does not incur liability under § 1983 unless there is  "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  The Supreme Court has explained:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).  In sum, the plaintiff must demonstrate that some policy or custom was the "but for" and proximate cause of her injury. *Piotrowski*, 51 F.3d at 517.

Plaintiff alleges that Sheriff Prator instituted an unwritten policy requiring officers to handcuff every arrested person behind the back.  In response, Defendants highlight that the Caddo Parish Sheriff's Office Standard Operating Procedure Manuel does permit handcuffing in the front ("At the time of the arrest, the arrestee should be handcuffed behind his back (pending no medical

or physical limitations that prevent otherwise)." [Doc. No. 37, Exh. 17, p. 5].  Defendants also argue that Plaintiff does not have a noticeable medical or physical condition that prevents her from placing her hands behind her back, and, therefore, the alleged handcuffing policy was incapable of being the cause in fact and proximate cause of the violation.

There are genuine issues as to whether Sheriff Prator instituted an unwritten handcuffing policy that was the motivating force underlying Plaintiff's excessive force claim.  When asked whether there are provisions in the sheriff's policies and procedures allowing officers to handcuff in the front rather than the back, Sergeant Henderson testified that Sheriff Prator's policy requires officers "to handcuff with the hands in the back, behind the back." [Doc. No. 32, Exh. CH, Deposition of Sergeant Henderson, at p. 49].  He further testified that the Sheriff's Office does not provide any alternatives to handcuffing in the back.  *Id.*[4]  His testimony generates factual issues as to whether the Caddo Parish Sheriff's Office has a well-settled policy of handcuffing arrestees exclusively behind the back, despite its written policy otherwise.  Dr. Milstead opined that, when an individual is handcuffed behind the back rather than in the front, the risk of handcuff palsy significantly increases.  A reasonable factfinder, therefore, could certainly conclude that such a policy was the motivating force behind Plaintiff's injuries.

 Moreover, it is a factual question whether Plaintiff's arms are obviously so short that it would be excessive to handcuff her behind the back; thus, Plaintiff's failure to inform the officers of such a condition does not preclude her from establishing the "moving force" element under *Monell* and its progeny.  Defendants' Motion for Summary Judgment, therefore, is DENIED to the

---

[4] Q: "Y'all don't carry the belts where you can, you know, handcuff a person to their–in front where they're hooked up to an ankle bracelet?" A: "No, sir."

extent it seeks dismissal of Plaintiff's excessive force claim against Sheriff Prator in his official capacity.

### 7.    State Law Claims

Plaintiff has alleged and briefed the following state-law claims against Defendants: (1) unlawful arrest and failure to intervene in an unlawful arrest; (2) excessive force; (3) and a state law vicarious liability claim against Sheriff Prator.  These claims are addressed in turn.

### a)    Unlawful Arrest

Under Louisiana law, the tort of false arrest occurs when one arrests and restrains another against his will and without statutory authority. *Henderson v. Bailey Bark Materials*, 47,946 (La. App. 2 Cir. 4/10/13); 116 So. 3d 30, 39. The claim requires proof of the following elements: (1) detention of the person; and (2) the unlawfulness of the detention.  *Id.* (citing *Harris v. Eckerd Corp.*, 35,135 (La. App. 2 Cir. 9/26/01); 796 So. 2d 719, 722.  Louisiana Code of Criminal Procedure article 213 provides that "a law enforcement officer may arrest a person without a warrant when that officer has reasonable cause to believe that the person to be arrested has committed an offense." *State v. Smith*, 42,089 (La. App. 2 Cir. 6/20/07); 960 So. 2d 369, 375.  This requires that an officer have probable cause for the arrest. *See State v. James*, 42,976 (La. App. 2 Cir. 2/13/08); 975 So. 2d 801, 803. Moreover, "Louisiana applies qualified immunity principles to state constitutional law claims based on the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under §1983." *Roberts v. City of Shreveport,* 397 F.3d 287, 296 (5th Cir. 2005) (internal citations and quotations omitted).

Because the Court finds that there was probable cause to arrest Plaintiff for disturbing the peace, the arrest was lawful, and Defendants are entitled to qualified immunity.  Thus, Defendants'

Motion for Summary Judgment is GRANTED to the extent it seeks dismissal of Plaintiff's state law claims against Defendants for unlawful arrest and failure to intervene in an unlawful arrest.

### b) Excessive Force

Louisiana's excessive force tort mirrors its federal constitutional counterpart. *See Kyle v. City of New Orleans,* 353 So.2d 969, 972 (La. 1977) ("The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result.").  "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case," and factors to consider are: (1) the known character of the arrestee, (2) the risks and dangers faced by the officers,  (3) the nature of the offense involved, (4) the chance of the arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the arrestee, and (7) the exigencies of the moment."  *Deville*, 567 F.3d at 173 (quoting *Kyle,* 353 So.2d at 973).

The Fifth Circuit has determined that these considerations are functionally equivalent to the *Graham* factors.  *See Deville*, 567 F.3d at 173.  For the reasons set forth above in the ruling on Plaintiff's § 1983 excessive force claim, Defendants' Motion for Summary Judgment is DENIED to the extent it seeks dismissal of the state law claims for excessive force against officers Benevage and McDonnell.

### c) Vicarious Liability

Plaintiff alleges that Sheriff Prator is vicariously liable under Louisiana law for false arrest and for his officers' use of excessive force.  Defendants argue simply that Deputies Benevage and

McDonnell did not commit any of the alleged torts and therefore that vicarious liability is unavailable.

Under LA. CIV. CODE ANN. art. 2320, "an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment." *Brasseaux v. Town of Mamou*, 752 So.2d 815, 821 (La. 2000). Governmental entities "do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer." *Deville*, 567 F.3d at 173 (citing *Brasseaux*, 752 So.2d 815); *see also Bussey v. Dillard Dept. Stores, Inc.*, 984 So.2d 781, 784 (La. App. 1st Cir. 2008) ("[V]icarious liability [under article 2320] applies to law enforcement employers as well.") (citations omitted).

The Louisisana Supreme Court has "stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Id.* at 820 (internal citations omitted). Liability is

> predicated on whether the tortious conduct of the employee is 'so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests.'

*Id.* (quoting *LeBrane v. Lewis*, 292 So.2d 216 (La.1974). Whether vicarious liability applies is a mixed question of law and fact. *Bates v. Caruso*, 003-CA-2150 (La.App. 4Cir. 07/28/04); 881 So.2d 758, 761.

Applying the *LeBrane* factors, the Court finds that the deputies were acting within the course and scope of their employment when they arrested, handcuffed, and transported Plaintiff. The deputies were on duty when they performed these actions, and these actions were certainly within the scope of their duties as police officers. *See Barrios-Barrios v. Clipps*, 825 F. Supp. 2d 730, 742 (E.D. La. 2011) (applying Louisiana law and holding that there were genuine issues of fact precluding summary judgment on plaintiff's vicarious liability claims against the New Orleans Police Department where plaintiff claimed an *off-duty* officer unlawfully searched his home). Thus, if Plaintiff can prove either her excessive force or false arrest claim, the Sheriff could be held vicariously liable under article 2320.

However, with regard to Plaintiff's false arrest claim, the Court has found that the deputeis had probable cause to arrest Plaintiff, and, thus, Plaintiff cannot proceed to trial on this vicarious ability claim. The Defendants' Motion for Summary Judgment is GRANTED to the extent it seeks dismissal of Plaintiff's vicarious liability claims against Sheriff Prator for unlawful arrest.

On the other hand, the Court has found that Plaintiff has presented genuine issues of material fact for trial on her excessive force claim. If Plaintiff can prove that she was subjected to excessive force by the deputies, the Sheriff can be held vicariously liable under article 2320. Therefore, Defendants' Motion for Summary Judgment is DENIED to the extent it seeks dismissal of Plaintiff's vicarious liability claims against Sheriff Prator for excessive force.

### III.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Strike [Doc. No. 38] is DENIED.

Defendants' Motion for Summary Judgment [Doc. No. 30] is GRANTED IN PART AND DENIED IN PART. The motion is DENIED to the extent it seeks dismissal of Plaintiff's § 1983

claims for excessive force against Deputies Benevage and McDonnell in their individual capacities.
The motion is also DENIED to the extent it seeks dismissal of Plaintiff's § 1983 official capacity and his state law vicarious liability claims of excessive force against Sheriff Prator.  The Motion for Summary Judgment is otherwise GRANTED.  Plaintiff's § 1983 claims for unlawful arrest and retaliatory arrest, his § 1983 official capacity claims for excessive force against Deputies Benevage and McDonnell, and his state law vicarious liability claim against Sheriff Prator for unlawful arrest are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 6th day of February, 2015.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE